## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CEDRIC YARBROUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:16-cv-0100-JEO |
| | ) | |
| KAMTEK INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

In this action, Cedric Yarbrough ("Plaintiff") claims that his former

employer, Kamtek, Inc. ("Defendant"), discharged him because of his race and

gender and in retaliation for complaining about discrimination, in violation of Title

VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e

*et seq*. (Doc.[1] 4, Amended Complaint). He also asserts that he was sexually

harassed while he worked for Kamtek. The case now comes to be heard on

summary judgment motions filed by both Plaintiff and Defendant. (Docs. 20 &

24). Also before the court is Defendant's motion to strike portions of Plaintiff's

---

[1]References to "Doc(s). __" are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of the Court. Pinpoint citations to deposition testimony are to the page of the reporter's transcript. Unless otherwise noted, pinpoint citations to other documents are to the page of the electronically filed document in the court's CM/ECF system, which may not correspond to pagination on the original "hard copy" presented for filing.

evidentiary submission offered in support of his opposition to Defendant's motion for summary judgment. (Doc. 25). Upon consideration, the court[2] concludes that Defendant's motion is due to be granted, Plaintiff's motion is due to be denied, and the motion to strike is due to be granted in part and denied in part.

## I.      SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, party is authorized to move for summary judgment on all or part of a claim or defense asserted either by or against the movant. Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a

---

[2]This action is assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and this court's general order of reference dated January 2, 2014. The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. (Doc. 10).

genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. PROC. 56(c)(1)(A), (B). In its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II.     BACKGROUND[3]

### A.     Facts Leading to the Termination

Plaintiff is African-American. He was hired in 2011 as an assembly operator by Defendant, which is a manufacturer of automobile body parts located

---

[3]The facts set forth in this section are gleaned from the evidentiary materials submitted by the parties on Defendant's motion for summary judgment. (*See* Docs. 21, 24 & 26-1 to 27). In accordance with the applicable standard of review, the court credits Plaintiff's version of events, giving her the benefit of reasonable inferences. However, Defendant disputes a number of Plaintiff's material allegations, so the facts set forth here are those assumed for purposes of the motion, although they may not be the "actual" facts.

in Birmingham, Alabama. He moved to the position of quality auditor about one year later. He was supervised by Tiffany Washington, Allen Bryant and Joe Griffin. These supervisors reported to group leader Carlin Shade, who reported to quality manager Bill Zinn. Charman Meador is the Human Resources Manager for Defendant.

In March 2014, Kamtek employee Sherrell Hall lodged a complaint against Plaintiff, alleging that Plaintiff sent her some inappropriate photograph and text messages. This incident occurred shortly after they were in a sexual relationship while Plaintiff was separated from his wife. (Pl. Dep.[4] at 55-62). When Hall told Plaintiff that she would be showing the photograph to Kamtek human resources, he responded, "I can ask u what I want I'm not a[t] work...." (Def. Ex.[5] 3 (Doc. 21-1 at 95)). Plaintiff also sent Hall additional text messages. (*Id*. at 95-97; Pl. Dep. at 59).

After receiving Hall's complaint, Meador talked with Plaintiff. She showed him the text messages and told him that regardless of when they were sent, such communications were inappropriate. (Pl. Dep. at 63). Meador investigated the

---

[4]Plaintiff's deposition is located at document 21-1. It is referenced as "Exhibit A." Page references are to the deposition pages, not the court's electronic page numbers located at the top of each document.

[5]"Def. Ex. ___" refer to Defendant's exhibits that are attached to Plaintiff's deposition.

complaint and, ultimately, issued a progressive discipline to Plaintiff. The documented discipline informed Plaintiff that this type of behavior was unacceptable and will not be tolerated. It further informed him that further incidents would result in additional progressive discipline, "up to and including termination."[6] (Def. Ex. 5 (Doc. 21-1 at 101)). Plaintiff refused to sign the disciplinary document and did not agree with the write-up. (*Id.*)

Plaintiff was coached on October 3, 2014,[7] for working unscheduled time without supervisor authorization. The coaching was not a progressive discipline and had no impact on Plaintiff's employment.

On March 20, 2015, Human Resources Coordinator Amanda Eubanks received a LinkedIn message from Benita Sager, a woman who was not a Kamtek employee and whom Eubanks did not know. The message stated, in part, that Plaintiff had been sending Sager "very inappropriate (nude) pictures of himself" and that he had sent her inappropriate information from his work computers. (Meador Decl., ¶ 7 & Exhibit 2[8] (Doc. 21-2 at 8-9)). Meador investigated

---

[6]This discipline did not disqualify Plaintiff from any job opportunities. (Def. Ex. 4 (Doc. 21-1 at 99-100).

[7]Defendant erroneously stated this occurred in March 2012 in its motion for summary judgement. The mistake was corrected in its reply (doc. 26) and in Meador's second declaration (doc. 26-1). That mistake does not impact the court's decision in this matter.

[8]References to "Exhibit ___" are to the exhibits attached to Meador's declaration. (*See* Doc. 21-2).

Plaintiff's use of his Kamtek computer and email system and discovered that Plaintiff had been using his Kamtek computer to communicate with various women through LinkedIn and email, asking them on dates and giving them his phone number. (Meador Dec., ¶ 8; Pl. Dep. at 105,[9] Def. Exs. 7, 8 (Doc. 21-1 at 106-21)). Meador also discovered a nude picture on Plaintiff's work email that had been sent to him from his personal email. (Pl. Dep. at 106-08; Def. Ex. 9 (Doc. 21-1 at 122-23)).

Because of the discipline Plaintiff received due to the Hall complaint in March 2014, Kamtek considered this additional conduct to be a second offense. Premised on the repeat nature of this conduct, Kamtek determined that Plaintiff's inappropriate communications merited immediate termination. (Meador Dec., ¶ 9). Accordingly, Meador and Zinn met with Plaintiff on March 26, 2015, to inform him that his employment was being terminated. They told him the termination was based on his violation of company policy by sending inappropriate emails and having inappropriate pictures on his email. (Pl. Dep. at 104, 117).

### B. Plaintiff's Additional Facts

#### 1. Other Incidents

Around the end of 2013, Plaintiff complained to Meador that coworker

---

[9]Plaintiff identified the women as "friends." (*Id.*)

Tammy Quarles had harassed him. (Pl. Dep. at 91 & 142). Plaintiff complained that Quarles rubbed his head, touched his private parts, and told him that she wanted to give him a "blow job." (*Id*. at 140). Meador initially learned of Plaintiff's complaint when supervisor Allen Bryant contacted her about a loud verbal confrontation between Plaintiff and Quarels. Meador investigated the matter, talking with both Plaintiff and Quarles. Plaintiff told both Bryant and Meador that all he wanted was for Quarles's behavior to stop and that he did not want to get anyone in trouble. (Pl. Dep. at 143; Meador Dec., ¶ 11 & Exhibit 3 (Doc. 21-2 at 11)). Plaintiff states that the harassment continued after his complaint to Meador, but admits that Quarles never touched him again after Meador spoke to her and that the additional harassment consisted of her blowing him kisses and licking her lips at a Christmas party. (Pl. Dep. at 144-46; 194). He also stated that Quarles "passed [him] by" and that he heard from other employees that she was talking about him. (*Id*. at 144). According to Plaintiff, he told Meador about the incidents, "but nothing happened." (*Id*.)

In September 2014, Plaintiff complained to supervisor Tiffany Washington that two black females in his department were sent to Mercedes for the day for training and that he did not receive the same training. (Pl. Dep. at 100-01 & 103). Plaintiff did not speak to Meador about this complaint. (*Id*. at 102 & 149-150).

In or around October or November 2014, Plaintiff complained to Meador that white coworker Robert May was being allowed to work extra hours on Sunday and he was not. (Pl. Dep. at 169-73). Kamtek payroll records show that May never worked on a Sunday during that period of time.[10] (Meador Dec., ¶ 13 & Exhibit 4 (Doc. 21-2 at 13-17)).

On November 22, 2014, Plaintiff also complained to Meador that he believed he should have been paid for the full four hours of a scheduled shift he worked despite the fact that he was sent home early due to a lack of work. (Pl. Dep. at 81-83, 87 & Def. Ex. 6 (Doc. 21-1 at 103)). Plaintiff asserted that Defendant's failure to pay him for those four hours showed favoritism because he had learned that another supervisor, Tiffany Washington, paid employee Raphael Ward under similar circumstances. (*Id*. at 84 & 88). Meador responded that Kamtek did not have a minimum amount of hours pay guarantee. After several communications, Plaintiff told Meador, "I understand the rule which I have no issues or concern with" and "I don't need to take any more of your time up on this matter." (Pl. Dep. at 87, 90 & Def. Ex. 6 (Doc. 21-1 at 103); Meador Dec., ¶ 5).

---

[10]Meador noted in her second declaration that May did work a Sunday shift on February 8, 2015. (Second Meador Dec., ¶ 8 (Doc. 26-1 at 3)). This, however, was well after Plaintiff's complaint. Additionally, there is no indication Meador was aware of this event when it occurred. She states that she did not receive any email notice of the event from Plaintiff. (*Id*., ¶ 7) This correction does not impact the court's determination on the motion for summary judgment.

In 2014, Plaintiff also reported to Meador and Zinn that supervisor Joe Griffin had threatened to physically harm another employee. (Pl. Dep. 95-96). According to Plaintiff, no action was ever taken on his report. (*Id*.) As a result, he was concerned about his well-being in this work environment. (*Id*.)

## 2. Comparators

Plaintiff asserts that white employees Sam Stuckey, Jerry Conn, and Adriano Avellar had nude pictures in their work email, but Defendant treated them differently. (Pl. Dep. At 116-124; Doc. 24). Plaintiff stated at his deposition that he did not know whether Meador knew about the pictures. (*Id*.) Meador states that she does "not regularly review employees' email accounts." (Meador Dec., ¶ 14). Typically, she looks at them when she receives a specific complaint about an employee. (*Id*.) She further states that she never received a complaint about Stuckey or Conn. She did receive a complaint in May 2014 from a Kamtek employee that Avellar had inappropriate pictures on his phone that he was showing to a coworker. (*Id*., ¶ 14). Meador investigated the matter. As a result of the investigation Avellar was removed from a team lead position, which also resulted in a deduction in his pay. (*Id*., ¶ 16). Avellar never engaged in this conduct again. (*Id*., ¶ 17).

## III.    DISCUSSION

### A.    Preliminary Matters

While Plaintiff's filings can be difficult to follow, Plaintiff appears to be advancing claims that he has been (1) discriminated against on the basis of his race and gender; (2) retaliated against; and (3) sexually harassed. Each of these will be addressed below. Before doing so, however, it is important to place the individual claims in context.

### 1.    Timeliness

Defendant initially argues that while Plaintiff's primary substantive claims seem to center around his termination, to the extent he asserts claims of earlier events, many of them are untimely. (Doc. 20 at 12). The court agrees.

A Title VII plaintiff is required to file a Charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the complained-of action. *Anderson v. Embarq/Sprint*, 379 F. App'x 924, 926 (11th Cir. 2010)[11] (citing 42 U.S.C. § 2000e–5(e)(1)). "Failure to file a timely charge with the EEOC results in a bar of the claims." *Rizo v. Ala. Dep't of Human Resources*, 228 F. App'x 832, 835 (11th Cir. 2007). In this case, Plaintiff filed his EEOC Charge on April 21,

---

[11]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

2015. (Ex. C (April 21, 2015 EEOC Charge) (Doc. 21-3 at 2)). Accordingly, any claims predating October 23, 2014, are time-barred as substantive claims. They may, however, be considered in placing the timely claims in context.

### 2. General Framework for Analyzing Plaintiff's Claims

Because Plaintiff attempts to prove that claim using circumstantial evidence of discriminatory intent, the court employs the familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1339 (11th Cir. 2017). Under that analysis, the plaintiff has the initial burden to prove a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. "Under the *McDonnell Douglas* scheme, 'establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) (quoting *Burdine*, 450 U.S. at 254). This presumption "places upon the defendant the burden of producing an explanation to rebut the prima facie case- *i.e.*, the burden of 'producing evidence' that the adverse employment action was taken 'for a legitimate, nondiscriminatory reason.'" *Id.*, 509 U.S. at 506-07 (quoting *Burdine*, 450 U.S., at 254). Once the defendant produces sufficient evidence to support a nondiscriminatory explanation

for its decision, the plaintiff must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (*quoting Burdine*, 450 U.S. at 253).

### B.      Discriminatory Treatment and Discharge Premised on Race

Title VII's anti-discrimination provision makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff's initial claim is that he was discriminated against based on his race in two specific areas: (1) concerning the hours he was permitted to work and (2) in his termination. His second claim is that he was discriminated against based on his gender in the training he received and in the way Defendant responded to his sexual harassment complaint.

### 1.     Race Discrimination Claims

Plaintiff's complaint about the hours he was permitted to work stems from two distinct events: (1) the coaching he received regarding working unscheduled time without supervisor authorization and (2) his November 2014 complaint that he should have been paid for a full shift when he was sent home early.  To the extent the coaching incident is the basis of Plaintiff's initial claim, it is insufficient for a number of reasons.  First, because the incident occurred on October 3, 2014 (Exhibit 1 (doc. 21-2 at 3)), over 180 days before the filing of the EEOC Charge, it is untimely.

Second, Plaintiff has not met the *McDonnell Douglas* requirements.  He has not demonstrated a prima facie case of discrimination on this claim.  This incident is not an adverse job action.  It had no impact on Plaintiff's employment or his termination.  Additionally, Plaintiff has not identified a similarly situated comparator outside his protected class who was treated more favorably with regard to hours worked and paid.  While Plaintiff asserts two coworkers allegedly were treated more favorably with regard to hours – Robert May and Raphael Ward, the undisputed evidence refutes the claim.  Specifically, Plaintiff claims that May was allowed to work Sundays during October through December of 2014; however, Kamtec's payroll records show that May did not work a single Sunday during that

time period.  (Meador Dec., ¶ 13, Ex. 4 (Doc. 21-2 at 13-17)).  As to Ward, who was allegedly paid for a full shift when he was sent home early, he is not an adequate comparator because he is black.  (Pl. Dep. at 152, 179).  This claim also fails because Plaintiff has not shown that Kamtek's legitimate, non-discriminatory reason for disciplining him and for refusing to pay him for unapproved hours – his violation of corporate policy – was pretextual.

Plaintiff's termination claim is also due to fail.  Generally speaking, a plaintiff can make out a prima facie case of racially discriminatory discharge under *McDonnell Douglas* by presenting evidence of the following circumstances: (1) that the plaintiff was qualified for his position, (2) that the plaintiff was terminated, and (3) that the defendant either (a) treated a similarly situated employee of another race, *i.e.*, a "comparator," more favorably or (b) replaced the plaintiff with someone of another race.  *See Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015).

For purposes of summary judgment, Defendant contests only Plaintiff's ability to prove the third element above.  "[I]n order to be considered 'similarly situated' for purposes of proving a prima facie case, an employee allegedly receiving lesser or no discipline than the plaintiff must have been involved in or accused of the 'same or similar misconduct' and operated under the same

14

workplace rules or policies." *Dent v. Federal Mogul Corp.*, 129 F. Supp. 2d 1311, 1314 (N.D. Ala. 2001) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Plaintiff argues that he was improperly terminated for sending inappropriate emails and possessing inappropriate pictures on his company computer. In conclusory fashion, he also denies these allegations. (Doc. 24 at 2). Construing Plaintiff's pleadings broadly, he appears to be asserting that Sam Stuckey, Adriano Avellar, Jerry Conn, Ron Brazee, Laurie Webb, and Jamie Gilbert are white comparators who have been treated differently. Defendant argues that none of these individuals are appropriate comparators. The court agrees with Defendant.

Plaintiff claims that Stuckey and Conn had nude pictures on their Kamtek emails, but admits that he does not know whether Meador or any other Kamtek manager was aware of Stuckey's or Conn's alleged activities. (Pl. Dep. 116, 121-22 & 124). To the extent Plaintiff claims that Ron Brazee used his Kamtek email for personal reasons, Plaintiff does not know whether those emails contained nude pictures. (*Id*. at 163). To the extent Plaintiff claims that Laurie Webb, Jerry Conn, and Jamie Gilbert sent emails through LinkedIn, Plaintiff does not know the nature of those emails and did not complain about their activities to Meador. (*Id*. at 164-66). Still further, Meador's declaration states that she was not aware of

inappropriate activity by any of these individuals, as she never received a complaint about their conduct. (Meador Dec., ¶ 14). Accordingly, these individuals are not adequate comparators. Because Plaintiff does not know the content of the emails or the materials on the other individuals' computers, they cannot be comparators. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) ("The plaintiff and the employee she identifies as a comparator must be similarly situated 'in all relevant respects.'"). Additionally, because Plaintiff has not demonstrated that Meador knew of the other offensive materials, the evidence is inadequate to demonstrate a prima facie case. *See Lee v. U.S. Steel Corp.*, 450 F. App'x 834, 839 (11th Cir.2012) ("[P]roffered comparators' actions are only relevant if the plaintiff shows that the decisionmaker knew of the prior similar acts and did not discipline the rule violators.").

Adriano Avellar is the only purported comparator identified by Plaintiff that is somewhat similarly situated. Avellar did show inappropriate pictures to a coworker and Meador did learn of the misconduct. (Meador Dec., ¶¶ 15-17, Pl. Dep. at 123). However, this evidence does not demonstrate a prima facie case of discrimination. Instead, this evidence tends to show that Avellar was actually treated more harshly than Plaintiff. Specifically, Plaintiff was given a verbal warning on his first offense when it was determined that he sent an inappropriate

picture to Hall while Avellar was demoted and received a cut in pay as a result of his first offense. (*Compare* Meador Dec., ¶¶ 6, 16; Pl. Dep. at 123 & Ex. 5). Additionally, Avellar is not an appropriate comparator in that he never committed a second offense.

To the extent the Eleventh Circuit Court of Appeals has noted that despite the absence of evidence of a compartator, intentional discrimination may be shown by "'a convincing mosaic of circumstantial evidence,'" the court fails to see such evidence in this case. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). *See also Quigg v. Thomas County Sch. Dist.*, 814 F.3d 1227, 1239-40 (11th Cir. 2016) ("the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent" ).

Assuming for the sake of argument that Plaintiff was able to meet his prima facie case of discrimination concerning his termination, he has failed to show that Kamtek's legitimate, non-discriminatory reason for that termination is pretextual. Defendant asserts that Plaintiff's second violation of its policy is the reason for his termination. Plaintiff has not refuted this.

## 2. Sex Discrimination Claims

Plaintiff alleges that in September 2014, he complained to his supervisor at

the time, Tiffany Washington, that two black females in his department were sent to Mercedes for the day for training and that he did not receive such training. (Pl. Dep. at 100-01, 103 & 149-50). Plaintiff also alleges he was discriminated against in the manner Defendant responded to his sexual harassment claims involving Quarles. Each will be addressed below.

Concerning the failure to train claim, Defendant is due summary judgment for three reasons. First, the claim is untimely. It occurred more than 180 days before Plaintiff filed his EEOC charge. Second, Plaintiff cannot show that his failure to receive a single day of training adversely affected his employment in any way. *See Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x 905, 911 (11th Cir. 2012) ("If the defendant's action had no tangible, negative effect on the plaintiff, no adverse action exists."). Third, Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's failure to receive this training. Defendant asserts that Plaintiff was never sent to training at Mercedes because he was "never in a position where sending him to Mercedes would benefit the company." (Meador Dec., ¶ 12). Plaintiff has offered no evidence disputing this reasoning.[12]

_____

[12]He did attach an affidavit from Shernevoline Sanders regarding this claim. She states that after she was hired by Defendant in the quality department, she received one day of training at Mercedes. (Doc. 24 at 15). This evidence was not objected to in Defendant's motion to strike. (*See* Doc. 25). Accordingly, it is due to be considered. However it adds little to the case because it provides no time frame, it provides little detail, and it provides no context. Plaintiff has failed to show that Sanders' training was not necessary to perform her job or that his failure

In fact, at his deposition, he testified that other male employees were sent to Mercedes for training. (Pl. Dep. at 152).

Plaintiff further claims that Defendant discriminated against him based on his gender when it did not investigate his sexual harassment complaint involving Quarels in the same way that it investigated sexual harassment complaints made by women. (Pl. Dep. at 138). Summary judgment is due to be granted as to this claim for at least two reasons. First, this claim also is untimely. Plaintiff last complained to Meador of sexual harassment prior to October 3, 2014. (Pl. Dep. at 145, 189-190 & 193). This was more than 180 days before his EEOC Charge was initiated. Second, the alleged unequal treatment in the handling of a sexual harassment claim is not an adverse action in and of itself. *See Entrekin v. City of Panama City, Fla*., 376 F. App'x 987, 995 (11th Cir. 2010) (no adverse action when defendant failed to investigate plaintiff's sexual harassment complaint against one coworker and failed to sustain her complaint against another coworker because "the plaintiff herself must suffer an adverse employment action"); *Dorsey v. Fulton Cty*., No. 1:10-CV-679-TWT-ECS, 2012 WL 3871921, at *13 (N.D. Ga. Aug. 1, 2012), report and recommendation adopted sub nom. *Dorsey v. Fulton Cty. Pub. Works Dep't*, No. 1:10-CV-679-TWT, 2012 WL 3871919 (N.D. Ga. Sept. 5, 2012)

---

to be trained impacted his job performance in any way.

19

("Plaintiff's allegation of mishandling fails because Plaintiff has not shown that she suffered any materially adverse action as a result of the mishandling [of Plaintiff's complaint].  Defendant's failure to investigate Plaintiff's complaint sooner did not result in any adverse action because it did not result in any action taken against plaintiff herself." (internal quotations omitted)).

## C.    Retaliatory Discharge

Title VII's anti-retaliation provision prohibits an employer from discharging or otherwise discriminating against an individual either "[1] because he has opposed any practice made an unlawful employment practice by [the substantive anti-discrimination provisions of Title VII], or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a) (bracketed material added).

Plaintiff contends that his discharge was in retaliation for his complaints about Griffin's threatening comments to another employee, for complaining about two women receiving training that he did not receive, and for complaining of sexual harassment.  (Pl. Dep. at 125-26 & 133).  To establish a prima facie case of retaliation, Plaintiff must show (1) that he engaged in statutorily protected conduct, (2) that he suffered a materially adverse action, and (3) that a causal connection existed between the protected conduct and the adverse action.  *Crawford v.*

*Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Brungart v. BellSouth Telecomms., Inc*., 231 F.3d 791, 798 (11th Cir. 2000).

Defendant argues that summary judgment is due to be granted as to these claims as well. With regard to the claim involving Plaintiff complaining about Griffin's inappropriate behavior, Defendant argues this claim is without merit because reporting Griffin's behavior, which involves threats of violence, is not protected activity. (Doc. 20 at 21). While reprehensible, Griffin's threats to harm another employee are not unlawful under Title VII. *See Howard v. Walgreen Co*., 605 F.3d 1239, 1244 (11th Cir. 2010) (to establish statutorily protected conduct under Title VII, a plaintiff must show that she had "a good faith, reasonable belief that the employer was engaged in unlawful employment practices").

With regard to Plaintiff's other claims, which do involve protected activities, Defendant argues its motion for summary judgment is due to be granted because Plaintiff has not show the requisite casual connection between either claim and his termination. (Doc. 20 at 21-22). Defendant specifically argues Plaintiff has not satisfied the third prong of the prima facie case. (*Id*.)

Plaintiff admits that the only reason he thinks his termination was retaliation for these complaints was because the termination occurred after the events. (Pl.

Dep. 135-36). However, the evidence demonstrates that Plaintiff last complained about either of these events in about October 2014. This is at least five months prior to his termination. (*Id*. at 145, 189-190 & 193). This time lapse between the complaints and the termination defeats any presumption of causation. *See Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." (internal citations omitted)). The record in this case fails to demonstrate any additional evidence tending to show a causal connection.

Additionally, the court cannot ignore Plaintiff's intervening misconduct that included his sending inappropriate emails and having inappropriate pictures on his work email all in violation of company policies. *See Hankins v. AirTran Airways, Inc*., 237 F. App'x 513, 520-21 (11th Cir. 2007) (finding plaintiff's "intervening act of misconduct" as severing the causal connection between protected activity and adverse employment action that occurred five days thereafter). Accordingly, the court finds that Defendant's motion for summary judgment is due to be granted as to these claims.

**D.    Sexual Harassment Claim**

Plaintiff also asserts that he was sexually harassed by Quarles from September 2013 until January 2015.  (Doc. 24 at 2).  Defendant argues that Plaintiff has failed to establish all the elements necessary to advance this claim. (Doc. 20 at 23).

Claims of harassment by co-workers are governed by the standards applied in a hostile work environment claim.  *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760–63 (1998).  To prove a hostile work environment claim, a plaintiff must show: "(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable."  *Barlow v. Piggly Wiggly Alabama Distrib. Co*., No. 2:14-CV-971-WMA, 2015 WL 5770625, at *3 (N.D. Ala. Oct. 2, 2015) (quoting *Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798, 808 (11th Cir. 2010)).

Defendant argues that Plaintiff's claim fails because he does not satisfy the

fourth and fifth elements. Specifically, Defendant argues that the facts fail to demonstrate that the harassment involving Quarles was sufficiently severe or pervasive to alter the terms and conditions of employment and to create a discriminatorily abusive working environment. (Doc. 20 at 23). Defendant further argues that Plaintiff has failed to demonstrate an adequate basis for holding it liable. (*Id*. at 25). Plaintiff responds in conclusory fashion that he was sexually harassed by Quarles. (Doc. 24 at 2).

As to the first contention – severity or pervasiveness of the harassment – the law is clear. "Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive." *Barlow*, 2015 WL 5770625, *3 (quoting *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000)). "When evaluating the objective component, the Supreme Court has provided four non-exhaustive factors to consider: '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employees' job performance.'" *Id.* (quoting *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999)). "The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing

24

conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiffs' employment and create a hostile or abusive working environment." *Id.*

Defendant asserts that the totality of the circumstances in this case, based on Plaintiff's testimony, reveals that Plaintiff only claims he was touched on one occasion and that Meador addressed the situation in the manner requested by Plaintiff when he complained. (Doc. 20 at 23-24 (citing Pl. Dep. at 143; Meador Dec., ¶¶ 10-11 & Exhibit 3)). After that, Defendant asserts, "the extent of the 'harassment' was blown kisses, one instance of Quarles licking her lips at a Christmas party, Quarles passing by him at work (which is normal behavior for coworkers) and nonspecific hearsay statements that Quarles was talking about Plaintiff." (*Id*. (citing Pl. Dep. 144-46)). "These occasional gestures, even considered with the earlier claim of touching," Defendant asserts, "do not amount to severe or pervasive as a matter of law." (*Id*.) In support of this argument, Defendant cites to the circumstances in three cases: *Barlow*, 2015 WL 5770625, at *1 (where a supervisor/harasser blew an employee kisses and stared at her breasts several times a week, walked into her office and kissed her on the forehead, and forcibly attempted to kiss her before her wedding); *Johnson*, 234 F.3d 501, 508-09 (where plaintiff alleged fifteen separate instances of harassment over the course of four months that included unwanted massages, standing so close that the harassers

25

body parts touched the plaintiff from behind and also pulling his pants tight to reveal the imprint of his private parts, such that the employee could not get along with her an on-the-air co-host with whom her job required that she interact); *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418-19 (11th Cir. 1999) (alleging a "continuous barrage of sexual harassment" in the form of almost-daily abuse ranging from sexually explicit stories and jokes, to comments about the employee's body, to physical harassment).

The court finds that the circumstances in this case do not satisfy the fourth element. The complained-of conduct in its totality is insufficiently severe or pervasive as a matter of law. While the conduct did occur over a fifteen month period, the individual instances collectively are insufficient to state a claim.

As to the second contention – no basis for holding Defendant liable – Defendant asserts that "where an employee reports sexual harassment, the employer responds to the complaint, and the employee provides no notice that an agreed-upon strategy has failed to address the harassment, then it is not unreasonable for the employer to conclude that no further action is required on its part." (Doc. 20 at 25 (citing *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir. 1999) (where plaintiff relayed to her employer that she would be satisfied if her employer's intervention led to a cessation of the harassment, and

then assured her employer that everything was fine when later asked, it was not

unreasonable for the employer to assume that the matter had been addressed)).

Plaintiff does not specifically respond to this argument in his reply.  (*See* Doc. 24).

Plaintiff brought his harassment complaint to Meador.  He told her that all

he wanted was for Quarles's behavior to stop and that he did not want to get

anyone in trouble.  (Pl. Dep. at 143; Meador Dec., ¶¶ 10-11 & Exhibit 3).  Meador

immediately investigated the matter.  Her notes reflect the following:

> I met w/ Cedric regarding this issue.  He said Tammy was jealous
> because he talks to other women.  He said she just wanted her to leave
> him alone.
>
> I met w/ Tammy afterwards.  She said that Cedric is a womanizer and
> she was just trying to get him to stay in his own area.  She agreed that
> she would not contact him anymore and if he is in her area, she said
> she will contact her supervisor to deal with him.

(Meador Dec., ¶ 8 & Ex. 3 (Doc. 21-2 at 11)).  Quarles never touched Plaintiff

again after Meador addressed the issue.  (Pl. Dep. 145-46).  Quarles did lick her

lips on one occasion – a Christmas party, she blew Plaintiff kisses, and "may have

said things to other people."  (*Id*. at 144-46).  Plaintiff spoke to Meador again

about Quarles, but, according to Plaintiff, "nothing happened."  (*Id*. at 144).

The foregoing demonstrates that Meador addressed the significant

complaints advanced by Plaintiff.  To the extent she did not address the subsequent

matters, they are insufficient under the totality of the circumstances to support Plaintiff's claim of sexual harassment.

### E. Plaintiff's Motion for Summary Judgment

Document 24 in the record is captioned as "Plaintiff['s] Motion for Summary Judgment." (Doc. 24 at 1). A close read of the document reveals that it is really a response to Defendant's motion for summary judgment. (*See id*. at 5 (providing that because there are genuine issues of fact remaining Plaintiff "respectfully requests this Court deny the opposing party's Motion for Summary Judgment in its entirety")).

To the extent the pleading could be interpreted to include a Plaintiff's motion for summary judgment, it is due to be denied for the reasons stated above.

### F. Motion to Strike

Defendant has also filed a motion to strike portions of Plaintiff's evidentiary submission that was offered in his opposition to the motion for summary judgment (doc. 24). (Doc. 25). Plaintiff has filed a pleading in opposition to the motion. (Doc. 27). He argues that it would be inappropriate for the court to consider the motion and, even if the court does consider it, his affidavits meet the requirements of Federal Rule of Civil Procedure 56.

The court will treat Defendant's motion to strike as objections under Federal

Rule of Civil Procedure 56(c)(2). Pursuant to that rule, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). An advisory committee note to Rule 56(c)(2) provides that "[a]n objection [under Rule 56(c)(2)] functions much as an objection at trial.... The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." FED. R. CIV. P. 56 advisory committee's note to 2010 amendment. *Gambrell v Wilkinson CGR Cahaba Lakes, LLC* no. 2:13-cv-02146 - HGD, 2016 WL 8118529, *2 (N.D. Ala. Aug. 17, 2016).

In the first objection, Defendant asserts that the Affidavit of Derrick Moore should be stricken to the extent it provides, "Cedric Yarborough also reports sexual harasment (sic) to Charman Meador and showed her inappropriate pictures and nothing was done to Tammy Quarles." (Doc. 25 at 2). Defendant argues that the statement fails to demonstrate the requisite personal knowledge for admissibility. (*Id*.) Plaintiff argues that all the affidavits follow the requirements of Rule 56 in that they are all premised on personal knowledge and they have been sworn to under oath. The court agrees with Defendant.

Moore's statement does not evidence how he knows what he purports to be fact. Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that a

declaration used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4) (emphasis added); *see also Citizens Concerned About Our Children v. Sch. Bd. of Broward Cnty., Fla.*, 193 F.3d 1285, 1295 n.11 (11th Cir. 1999) (when ruling on a motion for summary judgment, "a court is not obliged to take as true testimony that is not based on personal knowledge."); *Givhan v. Electronic Engineers*, Inc., 4 F. Supp. 2d 1331, 1335 (M.D. Ala. 1998) (striking portions of affidavits not based on personal knowledge); *McLendon v. Georgia Kaolin Co., Inc.*, 782 F. Supp. 1548, 1557-58 (M.D. Ga. 1992) (portions of affidavits disregarded where affiants testified to something of which they had no personal knowledge). Accordingly, Defendant's objection is due to be sustained and the evidence excluded from consideration.

Defendant next asserts that Plaintiff's statement that Avella was sharing nude pictures with him at Kamtek on another occasion is due to be struck because it constitutes a "sham affidavit." (Doc. 25 at 3). Plaintiff does not specifically address the merits of this claim. (*See* Doc. 27).

> Under the sham affidavit rule, "[a]n affidavit may be stricken as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ...

> [and that party attempts] thereafter [to] create such an issue with an
> affidavit that merely contradicts, without explanation, previously
> given clear testimony.' " *Tippens v. Celotex Corp.*, 805 F.2d 949, 954
> (11th Cir.1986) (citations omitted). The court making this
> determination must be careful to distinguish "between discrepancies
> which create transparent shams and discrepancies which create an
> issue of credibility or go to the weight of the evidence." *Id.* at 953.

*Rodriguez v. Jones Boat Yard, Inc*., 435 F. App'x 885, 887 (11th Cir. 2011).

In his deposition, when Plaintiff was asked if he knew whether Avellar ever "did it again," Plaintiff stated that he did not know. (Pl. Dep. at 123). Defendant argues that this statement demonstrates that his affidavit testimony is false and due to be struck. The court disagrees. This discrepancy goes more to the issue of credibility or the weight to be given the testimony. The court cannot say under the circumstances that the affidavit is "transparent sham." Accordingly, this portion of the motion is due to be denied.

In denying the motion, and considering the statement, the court finds that this testimony does not alter the court's determination in this matter. There is no evidence that Plaintiff reported this incident to Meador or that she was aware of it. Thus, it cannot be said that Avellar is a comparator.

Lastly, Defendant argues that the affidavits of Roshinder Wilson and Janie Yarbrough are due to be struck because they are irrelevant to Plaintiff's claims. (Doc. 25 at 4). Again, Plaintiff does not specifically address the substantive merits

of this objection.

Wilson states that while she was working as a temporary service person at Kamtek, Avellar show her some pictures on his phone of naked women, women in thongs, pictures of himself in swim wear, and pictures of his private area. (Doc. 24 at 13). He also made inappropriate gestures and talked dirty. (*Id*.) Wilson also states that she reported this to her employer (PSI), who in turn reported it to "Kamtek HR." (*Id*.) Wilson was subsequently laid off for a week with pay. She was brought into a meeting with Kamtek and told she was to report to another shift for training. Thereafter, she was returned to her former shift where Avellar was the team leader. (*Id*.)

It is hard to determine the relevancy of this evidence because the information is so poorly stated. On one hand, it appears this incident may be the one that led to the demotion and reduction in pay for Avellar. On the other hand, it may be a separate incident. Either way, it does not change the outcome on Defendant's motion for summary judgment. To the extent the information is related to the demotion, it duplicative of what is already before the court. While it paints a more vivid and troubling course of events, it does not change the fact that it was Avellar's first incident and he was disciplined by Meador for it. Thus, Avellar remains an inappropriate comparator. To the extent the information concerns a

second incident, it has little evidentiary value in Plaintiff's case for a number of reasons. There is no time period specified, Meador is not named in the affidavit. There is no indication she was aware of this situation if it is a second one. Additionally, a good bit of the information appears to be non-specific (*e.g.* "they called me in") or lacking in personal knowledge (*e.g.* "they reported to Kamtek HR and they laid me off"). Accordingly, even to the extent this evidence may be considered, it is insufficient to change disposition of Defendant's motion for summary judgment.

Turning to the affidavit of Janie Yarborough, Plaintiff's wife, Defendant again argues it is irrelevant. The court agrees. Ms. Yarborough states that Meador caused her emotional distress and to experience a heart attack. (Doc. 24 at 17). She also complains that Meador released Plaintiff's personal information to Sager and this lead to her being harassed in her home. (*Id*. at 18). This evidence is irrelevant. *See* FED. R. EVID. 401. It fails to prove any fact that "is of consequence in determining th[is] action" on a motion for summary judgment. *Id*. Additionally, Ms. Yarborough is not a party to this action and her emotional situation is not properly before the court – especially on a motion for summary judgment. Thus, this aspect of the motion to strike is due to be granted.

## V. CONCLUSION

Defendant's motion for summary judgment (Doc. 20) is due to be granted Plaintiff's motion for summary judgment (Doc. 25) is due to be denied, and Defendant's motion to strike (Doc. 25) is due to be granted in part and denied in part. A separate final order will be entered.

**DONE**, this 21st day of December, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge